IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Case No. 5:20-cv-00637-M

| | |
|---|---|
| SHANE ROGERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **OPINION** |
| v. ) | **AND ORDER** |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

This matter comes before the court on: (1) the Government's motion to dismiss the complaint, filed on December 21, 2020 [DE-9]; and (2) Plaintiff's motion to remand the matter to state court, filed December 30, 2020 [DE-12]. For the reasons that follow, Plaintiff's motion is DENIED and the Government's motion is GRANTED.

I. **Background**

On November 12, 2020, Plaintiff filed a form complaint in Cumberland County, North Carolina District Court seeking a no-contact order against Nathaniel Hermann "for stalking or nonconsensual sexual conduct[.]" [DE-1-1] Within the complaint, Plaintiff generally alleges that Hermann is Plaintiff's boss and that Hermann has "torment[ed] and terroriz[ed]" Plaintiff and his colleagues by yelling and making threatening gestures at them during meetings at their "project site[.]" [DE-1-1 at 5] In essence, Plaintiff asked the state court to permanently order Hermann to avoid all contact with Plaintiff. [DE-1-1 at 6]

The Government removed Plaintiff's lawsuit to this court on Hermann's behalf on November 30, 2020, invoking both 28 U.S.C. § 2679 and 28 U.S.C. § 1442 [DE-1], and subsequently filed an amended

1

notice of removal on January 27, 2021 with additional detail [DE-19].[1] Within its amended notice of removal, the Government: (1) alleges that "Plaintiff is an employee with Leebcor Services, LLC ("Leebcor"), which is the prime contractor for a construction project at Fort Bragg, North Carolina" that "is being overseen by the United States Army Corps of Engineers" ("ACE"); and (2) points out that Plaintiff himself alleges that Hermann "is the Administrative Contract Officer in charge of [his] work team's project site"; and (3) alleges that Hermann was "acting in the course and scope of his employment at the time of the incident out of which Plaintiff's claim arose[.]" [DE-19 ¶¶ 2, 3, 6 (quoting [DE-1-1 at 5])] The Government also filed a 28 U.S.C. § 2679 certification that (1) certifies that Hermann "was acting within the scope of his employment as an employee of [ACE] at the time of the incident alleged in the Complaint" and (2) purports to substitute the Government as party defendant in Hermann's place. [DE-2]

On December 21, 2020, the Government filed a motion to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (hereinafter, e.g., "Rule 12(b)(1)"). [DE-9] Within its supporting memorandum, the Government, *inter alia*, invokes its sovereign immunity as a basis for dismissal. [DE-10]

---

[1] The court construes the Government's amended notice of removal as a motion by the Government seeking the court's leave to file the same, since a party has no right to amend a notice of removal without the court's permission once the thirty-day period during which 28 U.S.C. § 1446 allows removal has passed. *See Wood v. Crane Co.*, 764 F.3d 316, 323–24 (4th Cir. 2014) (affirming denial of motion to amend notice of removal as untimely). But because: (1) the court concludes that the amended notice of removal merely adds detail regarding the two legal bases for removal already invoked within the Government's initial notice of removal, *see id.* ("amendment is appropriate for technical changes, such as the exact grounds underlying diversity jurisdiction"); (2) Plaintiff challenged both of these bases within its motion to remand and supporting memorandum [DE-12–13]; and (3) Plaintiff has not in any way opposed the amended notice of removal, the court ALLOWS the amended notice of removal and treats it as the Government's operative pleading. *See* 28 U.S.C. § 1653 ("Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts."); Fed. R. Civ. P. 15(a)(2) (allowing amendment of pleadings with court's leave, stating that "[t]he court should freely give leave when justice so requires").

2

Plaintiff then filed a motion to remand the matter to state court on December 30, 2020. [DE-12] Within his supporting memorandum, Plaintiff argues, *inter alia*, that the Government's certification of Hermann's employment is insufficient to allow the court to exercise jurisdiction. [DE-13]

The parties' motions have both been fully briefed and are ripe for adjudication.

## II. Analysis

The court first addresses Plaintiff's motion to remand, since were that motion to be granted, the Government's motion to dismiss would be rendered moot.

### a. *Removal/Plaintiff's motion to remand*

Within his memorandum in support of his motion to remand, Plaintiff argues that neither 28 U.S.C. § 2679 nor 28 U.S.C. § 1442 are applicable in this case, and that his lawsuit was therefore improperly removed from state court. [DE-13]

28 U.S.C. § 2679, also known as the Westfall Act, "accords federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties." *Osborn v. Haley*, 549 U.S. 225, 229 (2007). As invoked by the Government within its amended notice of removal [*see* DE-19 at 1], the Westfall Act reads as follows:

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a State court shall be removed without bond at any time before trial by the Attorney General to the district court of the United States for the district and division embracing the place in which the action or proceeding is pending. Such action or proceeding shall be deemed to be an action or proceeding brought against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant. This certification of the Attorney General shall conclusively establish scope of office or employment for purposes of removal.

28 U.S.C. § 2679(d)(2). Within its 28 U.S.C. § 2679 certification, the Government's counsel claims authority delegated by the Attorney General and certifies that Hermann "was acting within the scope of his

3

employment as an employee of [ACE] at the time of the incident alleged in the Complaint[.]" [DE-2] The *Osborn* Court said that "[28 U.S.C. §] 2679(d)(2) is operative when the Attorney General certifies scope of employment, triggering removal of the case to a federal forum. At that point, § 2679(d)(2) renders the federal court exclusively competent and categorically precludes a remand to the state court." 549 U.S. at 243.

Plaintiff argues, however, that the Attorney General's certification is an improper basis for removing his lawsuit because: (1) the Westfall Act is part of the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* (the "FTCA"); and (2) he has not brought any tort claim for money damages, but has merely sought a no-contact order. [DE-14 at 4–5]; *see also* 28 U.S.C. § 2679(b)(1) (stating that the FTCA remedy "is exclusive of any other civil action or proceeding *for money damages* by reason of the same subject matter against the [federal] employee whose act or omission gave rise to the claim" (emphasis added)); 28 U.S.C. § 1346(b) (granting district courts "exclusive jurisdiction of civil actions on claims against the United States[] *for money damages* . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment" (emphasis added)). 28 U.S.C. § 2679(d)(2) by its terms concerns "any civil action or proceeding" without mention of the specific nature of the relief sought thereby, and Plaintiff does not direct the court's attention to any authority standing for the proposition that the Westfall Act certification procedure may only be used to remove tort claims that seek money damages. But the *Obsorn* Court did say that "the Westfall Act[] accords federal employees absolute immunity *from common-law tort claims* arising out of acts they undertake in the course of their official duties." 549 U.S. at 229 (emphasis added). The Government responds by citing decisions from this court holding that 28 U.S.C. § 2679(d)(2) is a valid basis for removing lawsuits seeking injunctive relief for alleged tortious conduct, including two cases where no-contact orders were sought from North Carolina's courts. *See Blount v. United States*, No. 5:19-CV-

4

347-FL, 2020 U.S. Dist. LEXIS 49001 (E.D.N.C. Mar. 20, 2020) (based upon alleged screaming); *Middleton v. United States*, No. 5:20-CV-484-BO, 2021 U.S. Dist. LEXIS 13095 (E.D.N.C. Jan. 21, 2021) (based upon alleged stalking).

But neither party has provided the court with any appellate authority clearly setting forth the answer to the question raised by Plaintiff's argument, and the court's independent research has uncovered none. Were it necessary, the court would be inclined to follow *Blount* and *Middleton* and hold that the 28 U.S.C. § 2679(d)(2) removal was proper. But the court need not so rule, because the Government also invoked 28 U.S.C. § 1442, the Federal Officer Removal Statute (the "FORS"), in both its initial and amended notices of removal. [DE-1 at 1; DE-19 at 1]

The FORS, which the Fourth Circuit has said "aims to protect the Federal Government from interference with its operations, primarily by providing a federal forum for a federal defense[,]" *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 254 (4th Cir. 2017) (internal quotation marks, ellipsis, and citations omitted), reads in relevant part as follows:

> (a) A civil action . . . that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>
> (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office[.]

28 U.S.C. § 1442(a)(1). The Fourth Circuit has stated the elements of FORS removal as follows:

> The federal officer removal statute allows a defendant to remove a case from state to federal court if the defendant establishes
>
> (1) it is a federal officer or a person acting under that officer;
>
> (2) a colorable federal defense; and

5

> (3) the suit is for an act under color of office, which requires a causal nexus between the charged conduct and asserted official authority[.]

*Ripley v. Foster Wheeler LLC*, 841 F.3d 207, 209–10 (4th Cir. 2016) (internal quotation marks, brackets, emphasis, and citations omitted). Where the removing party has "plausibly asserted" these three elements, the FORS is properly invoked and removal is allowed. *Sawyer*, 860 F.3d at 259.

The court concludes that the Government has plausibly asserted the elements necessary to properly remove the case under the FORS on Hermann's behalf.[2] First, both the initial and amended notices of removal plausibly allege that Hermann was an "Administrative Contracting Officer" working for ACE on the Fort Bragg project [DE-1 ¶¶ 3–5; DE-19 ¶¶ 3–5; DE-2], a fact which Plaintiff himself alleges within the complaint [DE-1-1 at 5]. Second, the amended notice of removal invokes the Government's sovereign immunity [DE-19 ¶ 14], which as described below in Section II(c) is a defense that is beyond colorable on the facts alleged in this case.[3] *See Cnty. Bd. v. Express Scripts Pharm., Inc.*, No. 20-1031, 2021 U.S. App. LEXIS 13086, at *19–20 (4th Cir. May 3, 2021) ("To be colorable . . . the defense must only be plausible." (internal quotation marks and citation omitted)). And finally, since Plaintiff alleges that (1) Hermann is ACE's officer "in charge of [Plaintiff's] work team's project site" and (2) all of the misconduct purportedly directed at Plaintiff[4] took place "on the job site" during meetings conducted in connection with Hermann

---

[2] *See infra* note 6 and accompanying text (Government removal on Hermann's behalf under the FORS not improper).

[3] Although the Government's initial notice of removal did not specify that it would rely upon a sovereign-immunity defense [*see* DE-1], the amended notice of removal did so [*see* DE-19 ¶ 14]. As discussed above, *see supra* note 1, the court has allowed the amended notice of removal, in part because Plaintiff expressed no opposition to the amendment during the several months that have passed since the amended notice was filed. *See Hendy v. Bello*, 555 F. App'x 224, 226 (4th Cir. 2014) (unpublished *per curiam*) (affirming removal as proper where the "colorable federal defense requirement was met *at the time the district court dismissed the action*." (emphasis added)).

[4] While Plaintiff's colleagues attest that Plaintiff's colleague Marciella Pollard was "stalked . . . to her personal vehicle" by Hermann [*see* DE-13-1 ¶ 9; DE-13-2 ¶ 8], Plaintiff's complaint is silent regarding any stalking, and even if it were not, Plaintiff lacks standing to sue based upon harm to another. *See Valley Forge Christian Coll. v. Ams.*

6

and Plaintiff's professional working relationship as agents of ACE and Leebcor, respectively [DE-1-1 at 5], Plaintiff's own complaint alleges the relevant nexus between Hermann's alleged misconduct and his official authority. [*see* DE-19 ¶ 15 (Government's amended notice of removal invoking complaint on this score)] Although Plaintiff argues that Hermann "engaged in conduct that can hardly be described as falling within the outer perimeter of his duties as an administrative contracting officer" [DE-14 at 4], the Supreme Court long ago made clear that the FORS allows for removal of such claims, and that Plaintiff's argument must fail:

> [O]nce petitioners had shown that their only contact with respondent occurred inside the penitentiary, while they were performing their duties, we believe that they had demonstrated the required "causal connection." The connection consists, simply enough, of the undisputed fact that petitioners were on duty, at their place of federal employment, at all the relevant times. If the question raised is whether they were engaged in some kind of "frolic of their own" in relation to respondent, then they should have the opportunity to present their version of the facts to a federal, not a state, court. This is exactly what the removal statute was designed to accomplish. Petitioners sufficiently put in issue the questions of official justification and immunity; the validity of their defenses should be determined in the federal courts.

*Willingham v. Morgan*, 395 U.S. 402, 409 (1969); *see also Sawyer*, 860 F.3d at 258 (noting subsequent to *Willingham* and *Ripley* that Congress amended the FORS in 2011 "to cover actions 'for *or relating to* any act under color of federal office,' adding the words 'or relating to[,]'" noting that "[t]his new language 'broadened the universe of acts' that enable federal removal, such that there need be only 'a *connection or*

---

*United for Separation of Church & State*, 454 U.S. 464, 472 (1982) ("at an irreducible minimum, Art[icle] III requires the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant, and that the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision." (internal quotation marks and citations omitted)); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990) (noting that 5 U.S.C. § 702 requires "the person claiming a right to sue [to] identify some 'agency action' *that affects him* in the specified fashion" and "show that he has 'suffered legal wrong' because of the challenged agency action, or is 'adversely affected or aggrieved' by that action 'within the meaning of a relevant statute.'" (emphasis added)). Any alleged stalking by Hermann is accordingly without relevance to this lawsuit.

7

*association* between the act in question and the federal office.'" (internal brackets and citations omitted)). In light of Plaintiff's allegations (invoked by the Government within its amended notice of removal) and these authorities, the court concludes that the Government has plausibly asserted a "connection or association" between Hermann's alleged misconduct and his official authority, *Sawyer*, 860 F.3d at 258, and thereby "sufficiently put in issue the questions of official justification and immunity" such that removal was therefore proper under the FORS, *Willingham*, 395 U.S. at 409. Plaintiff's motion to remand must accordingly be denied.

b. *Substitution*

Because the court concludes that removal was proper pursuant to the FORS, rather than the Westfall Act, the next question is whether the Government's substitution for Hermann is proper, since the only basis provided by the Government for the substitution is the Westfall Act. [*see* DE-2 (invoking 28 U.S.C. § 2679)]

Although the Government's amended notice of removal invokes 28 U.S.C. § 2679(d)(2) specifically [DE-19], the Attorney General's certification and substitution invoked 28 U.S.C. § 2679 more generally [DE-2]. 28 U.S.C. § 2679(d)(1) sets forth as follows:

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

28 U.S.C. § 2679(d)(1) accordingly allows the Government to substitute itself for a federal employee in a lawsuit already in federal court—like this case is by virtue of proper FORS removal, *see supra* Section II(a)—when the Attorney General certifies that the employee was acting within the scope of his federal employment at the relevant time.

8

Plaintiff has not contested the Government's scope-of-employment certification with any evidence that persuades the court that Hermann acted outside of the scope of his employment. Instead, Plaintiff relies upon: (1) affidavits of his colleagues tending to confirm Plaintiff's allegations of workplace misconduct [DE-13-1; DE-13-2]; and (2) conclusory arguments that Hermann's conduct, e.g., "can hardly be described as falling within the outer perimeter of his duties as an administrative contracting officer" [DE-14 at 4]. But Plaintiff's colleagues' attestations do not contradict the Government's certification and Plaintiff's conclusory arguments are insufficient as a matter of law to rebut the certification. *See Doe v. Meron*, 929 F.3d 153, 165 (4th Cir. 2019) ("In challenging the scope of employment certification, a plaintiff must prove by a preponderance of the evidence that the defendant was acting outside the scope of his employment. To meet this burden, a plaintiff must present or forecast specific evidence that contradicts the certification. . . . He cannot rely on conclusory allegations and speculation." (citations omitted)); *see also Wolverton v. United States*, No. 96-5224, 1997 U.S. App. LEXIS 3799, at *7 (6th Cir. Feb. 26, 1997) (unpublished) ("Ms. Wolverton pointed to no specific facts demonstrating that the actions taken by the defendants were outside the scope of their employment, however, and the district court therefore acted properly in accepting the Attorney General's certification. *An employee may obviously engage in improper conduct -- conduct in no way condoned by his employer -- that is still within the scope of his employment.*" (emphasis added)). The Attorney General's certification is accordingly accepted as conclusive evidence that Hermann was acting within the scope of his employment at all relevant times.

The question remains, however, whether Westfall Act substitution is proper where "the claim" seeks injunctive relief alone, since the Westfall Act is part of the FTCA. The court's independent research has uncovered some authority standing for the proposition that substitution is improper where injunctive relief is sought. *See Vanover v. Hantman*, 77 F. Supp. 2d 91, 97–98 (D.D.C. 1999) (denying Government's motion to substitute with respect to injunctive-relief claim, construing "the claim" in 28 U.S.C. § 2679(d)(1)

9

as "best understood in reference to the limiting language in" 28 U.S.C. § 2679(b)(1) regarding actions "for money damages"), *aff'd*, 38 F. App'x 4, 5 (D.C. Cir. 2002) (unpublished *per curiam*).

But authority from the Fourth Circuit stands for the proposition that the Government may substitute itself for its employees in lawsuits seeking injunctive relief concerning their professional actions. In *Hendy*, a panel of the Fourth Circuit affirmed the dismissal of a lawsuit seeking a restraining order against a federal employee that the Government had removed to federal court on the employee's behalf pursuant to the FORS. 555 F. App'x at 225–27. And in *Doyle-Penne v. Muhammad*, No. 99-2101, 2000 U.S. App. LEXIS 18902 (4th Cir. Aug. 4, 2000) (unpublished *per curiam*), a panel of the Fourth Circuit affirmed the dismissal of an injunctive-relief claim brought against a federal employee where the Government had: (1) substituted itself for the employee in a tort lawsuit pursuant to a 28 U.S.C. § 2679(d)(1) scope-of-employment certification; (2) successfully moved to consolidate the tort action with the action seeking injunctive relief; and (3) thereafter litigated the injunctive-relief on the employee's behalf. *Id.* at *3–4.

In light of *Hendy* and *Doyle-Penne*—and because: (1) Hermann's interests are aligned with the Government's such that substitution causes no prejudice to Hermann; and (2) it makes no meaningful impact upon the court's analysis,[5] such that there is no prejudice to Plaintiff—the court concludes that the

---

[5] The Supreme Court has said that "[a] suit against an officer of the United States is one against the United States itself if [1] the decree would operate against the sovereign; or [2] if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration; or [3] if the effect of the judgment would be to restrain the Government from acting, or to compel it to act." *Brown v. GSA*, 425 U.S. 820, 826–27 (1976) (internal quotation marks and citations omitted). The court concludes that the judgment Plaintiff seeks would both: (1) "interfere with the public administration[,]" because it would prohibit Hermann from executing his office to avoid being in contact with Plaintiff; and (2) "restrain the Government from acting, or to compel it to act[,]" because ACE would be required to replace Hermann on the project with another Administrative Contracting Officer. *Id.* The court would accordingly follow *Brown* and construe Plaintiff's complaint as effectively suing the Government even without the 28 U.S.C. § 2679(d)(1) certification and substitution, meaning that the court's conclusion regarding the propriety of substitution has no effect upon its sovereign-immunity analysis. *See also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but

10

Government is properly substituted as party defendant in this case.[6]

   c. *The Government's motion to dismiss*

Within its memorandum in support of its motion to dismiss, the Government argues, *inter alia*, that its sovereign immunity requires dismissal of the complaint. [DE-13]

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). Plaintiff's lawsuit is accordingly defeated by sovereign immunity unless the Government has consented to being sued in this fashion by waiving the immunity. The Supreme Court has said:

> Waivers of the Government's sovereign immunity, to be effective, must be unequivocally expressed. . . . [T]he traditional principle [is] that the Government's consent to be sued must be construed strictly in favor of the sovereign, and not enlarged beyond what the language requires[.]

*United States v. Nordic Vill. Inc.*, 503 U.S. 30, 33–34 (1992) (internal quotation marks, ellipsis, and citations omitted).

The only purported waiver identified by Plaintiff in response to the Government's motion is 5 U.S.C. § 702, which Plaintiff invokes in cursory fashion in a footnote asking the court in the alternative for leave to amend or replead. [DE-14 at 5 n.2 ("[A] waiver of immunity exists for non-monetary claims alleging that an officer acted, or failed to act, in an official capacity or under color of legal authority.")] 5 U.S.C.

---

rather is a suit against the official's office. As such, it is no different from a suit against the State itself." (internal citation omitted)).

[6] The court's conclusion applies equally with respect to the propriety of the Government's removal of the suit on Hermann's behalf pursuant to the FORS. *See Hendy*, 555 F. App'x at 224 ("The United States government, on behalf of Bello, removed the suit to federal court under 28 U.S.C. § 1442(a)(1), the federal officer removal statute, before the hearing for a final peace order." (emphasis added)).

11

§ 702, which is part of the Administrative Procedure Act, 5 U.S.C. § 1001 *et seq.* (the "APA"), sets forth in relevant part as follows:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

The Supreme Court has interpreted 5 U.S.C. § 702 as allowing an individual to sue federal agencies and their officers for non-monetary relief in the absence of another statutory source of subject-matter jurisdiction—and thus as implicitly effecting a waiver of the Government's sovereign immunity for such claims—but only where the plaintiff seeks to challenge final agency action. *See Lujan*, 497 U.S. at 882 ("[T]he person claiming a right to sue [under 5 U.S.C. § 702] must identify some 'agency action' that affects him in the specified fashion . . . When, as here, review is sought not pursuant to specific authorization in the substantive statute, but only under the general review provisions of the APA, the 'agency action' in question must be 'final agency action.'").

A case from the Fourth Circuit demonstrates why Plaintiff has not challenged any final agency action, and thus why 5 U.S.C. § 702 does not waive the Government's sovereign immunity in this case. In *Village of Bald Head Island v. United States Army Corps of Engineers*, 714 F.3d 186 (4th Cir. 2013) ("*Bald Head II*"), the Fourth Circuit affirmed a judgment from this court that dismissed, for lack of subject-matter jurisdiction, a challenge to certain actions allegedly undertaken by ACE in implementing a dredging project near Wilmington. *Id.* at 197. Below, Judge Boyle held that the plaintiff had not challenged any final agency action that is subject to judicial review under the APA, and concluded that it was therefore "without jurisdiction to consider Plaintiff's APA claims." *Vill. of Bald Head Island v. United States Army Corps of Eng'rs*, 833 F. Supp. 2d 524, 533–34 (E.D.N.C. 2011) (noting that "[w]hile 'action' has been interpreted to

12

mean comprehensively every manner in which an agency may exercise its power, it is only those actions that are final, and thus mark the consummation of the agency's decisionmaking process that are subject to judicial review" (internal quotation marks and citations omitted)). On appeal, the plaintiff-appellant argued that the district court had erred in concluding that the challenged actions did not constitute final agency actions, but the Fourth Circuit disagreed:

> The Supreme Court has held that as a general matter, two conditions must be satisfied for agency action to be final. First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined or from which legal consequences will flow. Here, the Corps made a *final* determination for purposes of the APA when it announced formal approval of the revised project in September 2000. *That approval, not the Corps' subsequent activities in carrying it out, was the final agency action. Thus, in the context of this case, 'project implementation' is neither 'agency action' nor 'final' agency action subject to judicial review under the APA.*

*Bald Head II*, 714 F.3d at 194–95 (emphasis added) (internal quotation marks, brackets, and citations omitted).

At bottom, Plaintiff complains regarding how ACE, through Hermann, is implementing the construction project on which Leebcor, through Plaintiff, works. [*see* DE-1-1 (Plaintiff's complaint alleging that Hermann is "in charge of my work team's project site" and describing alleged workplace misconduct which allegedly places Plaintiff "in physical danger when in [Hermann's] presence on the job site"); DE-13 at 3 (Plaintiff's memorandum in support of his motion to remand stating that "Plaintiff is an employee of Leebcor Services, a government contractor. . . . Defendant Hermann is the Administrative Contracting Officer that oversees his work and directs his duties"); DE-19 (amended notice of removal providing additional details regarding project)] Specifically, Plaintiff alleges that Hermann yells and makes threatening gestures at Plaintiff during meetings regarding the project. [*see* DE-1-1 at 5] While Hermann's conduct may have been inappropriate, the *Bald Head II* court made clear that acts undertaken

13

by federal agencies and their officers to implement federal projects are not final agency actions within the meaning of the APA, and that lawsuits seeking to enjoin such acts cannot be brought under the APA. 714 F.3d at 194–95 ("[B]y challenging the Corps' ongoing real world physical actions, even at a localized level, the Village is essentially demanding a general judicial review of the Corps' day-to-day operations in maintaining the channel, the type of review the Supreme Court has explicitly held the APA does not authorize." (internal quotation marks, brackets, and citations omitted)). The court follows *Bald Head II* in concluding that Plaintiff (1) has failed to allege any final agency action and therefore (2) cannot rely upon 5 U.S.C. § 702 to bypass the Government's sovereign-immunity defense.

The court accordingly concludes that it lacks subject-matter jurisdiction over Plaintiff's complaint, which must be dismissed pursuant to Rule 12(b)(1).

### III. Conclusion

For the foregoing reasons, Plaintiff's motion to remand is DENIED, the Government's motion to dismiss is GRANTED, and the Clerk of Court is instructed to close the case.

SO ORDERED this the 16th day of June, 2021.

Richard E Myers II
RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE